IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| JOHN THOMAS SCHOOLCRAFT, | |
| Petitioner, | CIVIL ACTION NO.: 2:19-cv-87 |
| v. | |
| WARDEN, G.S.P., | |
| Respondent. | |

### REPORT AND RECOMMENDATION

Petitioner John Schoolcraft ("Schoolcraft") filed a Second Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, challenging his 2012 Glynn County, Georgia convictions and sentence.[1] Doc. 38. Respondent filed a Second Amended Answer-Response and supporting exhibits. Docs. 8, 11, 36, 37, 40. Schoolcraft has filed a Supplement and several "Responses." Docs. 39, 41, 43, 45. Schoolcraft's Second Amended Petition is ripe for review.

As explained below, Schoolcraft was tried, convicted, and sentenced; then he appealed, then he filed not one, not two, but three state habeas petitions, all of which were denied. Schoolcraft also filed a motion for a new trial and an extraordinary motion for new trial, both of which were denied. Schoolcraft has, at times, been granted hearings on his requests for review. In his Second Amended Petition, now before this Court, Schoolcraft attempts to raise challenges which are procedurally defaulted or which have been ruled on by the state courts, and are, therefore, entitled to deference here. As a result, I **RECOMMEND** the Court **DENY** Schoolcraft's Second Amended Petition, **DIRECT** the Clerk of Court to **CLOSE** this case and

---

[1] Schoolcraft's Second Amended Petition is the operative pleading in this case. Doc. 35 at 5–6.

enter the appropriate judgment of dismissal, and **DENY** Schoolcraft *in forma pauperis* status on appeal and a Certificate of Appealability.

## BACKGROUND

After a jury trial, Schoolcraft was convicted of two counts each of child molestation, statutory rape, aggravated child molestation, and sexual battery against a child under 16 years of age in November 2012. Doc. 8-1 at 1; Doc. 38 at 1. Schoolcraft was sentenced to 40 years in prison and a life term on probation. Doc. 8-1 at 1; Doc. 8-8 at 208. He filed a motion for new trial, as amended, doc. 8-8 at 213, 228–56, which the Glynn County Superior Court denied after a hearing. Doc. 36-3 at 192–95. Schoolcraft filed a direct appeal, asserting insufficient evidence supported his conviction, the trial court erred by denying his motion to suppress, making various rulings on evidentiary matters,[2] and in giving its charges to the jury, and his trial counsel was ineffective. The Georgia Court of Appeals affirmed his convictions and sentence. Doc. 36-1.

Schoolcraft filed his first state application for writ of habeas corpus in Baldwin County in 2016, but he later amended his application. In his application, as amended, Schoolcraft asserted: (1) appellate counsel was ineffective for failing to raise the claim trial counsel was ineffective for failing to offer "proof of perjury/misrepresentation of a material fact[]" regarding the time of his arrest; (2) the State failed to correct testimony about the time Schoolcraft was arrested, in violation of Brady and Giglio;[3] (3) appellate counsel was ineffective by not raising a claim trial

---

[2] Some of Schoolcraft's claims of trial court error were the court permitting the state to introduce a statement he made about trying to have sex with the minor victim, allowing his wife to testify about conversations she had with Schoolcraft about his relationship with the minor victim, and allowing one of the investigators to testify about the minor victim's statements. Doc. 36-1 at 5–14.

[3] Brady v. Maryland, 373 U.S. 83, 87 (1963), in which the United States Supreme Court held, "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Giglio v. United States, 405 U.S. 150 (1972), in which the Supreme Court determined due process requires the government to disclose promises made to a witnesses.

counsel was ineffective for not retaining an expert witness who knew "a false confession could be obtained from a suspect by persuasive police conduct in light of authenticated recantation of the alleged victim[,]" doc. 8-3 at 1–3; (4) appellate counsel was ineffective by failing to raise as a separate ground Schoolcraft's claim his statement was not knowing and voluntary from his claim the trial court applied the incorrect standard to determine when and if Schoolcraft was "seized[]"; (5) the Glynn County Child Abuse Protocol in effect in 2011 was inconsistent with statewide guidelines, resulting in an equal protection issue; and (6) ineffective assistance of appellate counsel for failing to investigate policies and procedures the Glynn County Police Department used in 2011 in child maltreatment investigations to ensure the investigators' methods in taking of testimonial statements from victims were reliable, doc. 8-4 at 1–2. After a hearing, the Baldwin County Superior Court determined Schoolcraft did not establish deficient performance or prejudice by appellate counsel, Schoolcraft's Brady/Giglio claims were procedurally defaulted under O.C.G.A § 9-14-48(d), as he did not raise these claims with the trial court or on direct appeal, and Schoolcraft did not state a violation of a constitutional right relating to his Child Abuse Protocol claim. Doc. 8-5 at 9–15. Thus, the Baldwin County court denied Schoolcraft's petition. Id. at 16. Schoolcraft filed an application for a certificate of probable cause to appeal this denial, which the Georgia Supreme Court denied. Docs. 8-6, 8-7.

Schoolcraft then filed a second habeas petition with the Baldwin County Superior Court. Doc. 8-13. In that petition, Schoolcraft contended he was not provided with a full and fair hearing on his Fourth Amendment unlawful detention claim or his Fifth Amendment involuntary statements claim at trial or on direct appeal. Id. at 8. Schoolcraft also contended the trial court made inconsistent findings regarding his Fourth and Fifth Amendments claims and whether he made incriminating statements before or after arrest or Miranda warnings. Id. at 9. After a

Case 2:19-cv-00087-LGW-BWC   Document 48   Filed 05/20/22   Page 4 of 17

hearing, the Baldwin County court found Schoolcraft's first claim was successive under O.C.G.A. § 9-14-51, as he could have pursued this claim in his first petition.  Doc. 8-14 at 6. That court determined habeas relief was not available on Schoolcraft's second ground, as he should have filed a discretionary appeal of the trial court's order on those issues.  Id. at 7.

Additionally, Schoolcraft filed an extraordinary motion for new trial in the Glynn County Superior Court, and that court conducted a hearing on this motion on July 7, 2017.  Doc. 8-15 at 28.  In this motion, Schoolcraft asserted the prosecution failed to correct false or misleading testimony about his time of arrest, which adversely affected the court's ruling on the admissibility of statements he made to his wife.  Schoolcraft contended an investigator testified falsely about his arrest time being 5:57 p.m. rather than 4:21 p.m. and the testimony Schoolcraft was given his Miranda warnings prior to his arrest was false.  Id.  Schoolcraft also contended his earlier arrest time rendered his arrest illegal because it was not supported by probable cause.  The Glynn County court determined Schoolcraft's contentions were not based on newly discovered evidence and, in fact, the evidence in support of his motion existed before trial.  Thus, the court denied Schoolcraft's motion.  Id. at 31, 32.

Schoolcraft then filed a third state habeas corpus petition with the Baldwin County Superior Court.  Doc. 8-16.  He asserted the warrant affidavits for his arrest omitted the fact that his confession—the sole basis for a probable cause finding—was obtained in violation of Schoolcraft's constitutional rights.  Id. at 8.  In addition, Schoolcraft stated his trial counsel was ineffective for failing to investigate the police report to determine the time of arrest, which was material to his pre-trial motion to suppress and denied him "the best evidence" to show violations of his constitutional rights.  Id.  The Baldwin County court conducted a hearing on Schoolcraft's third petition and dismissed the petition as successive under O.C.G.A. § 9-14-51.

4

Doc. 37-4. The Georgia Supreme Court denied Schoolcraft's application for certificate of probable cause to appeal.

https://scweb.gasupreme.org:8088/results_one_record.php?caseNumber=S21H0393 (last visited May 20, 2022); Doc. 46.

## DISCUSSION

In his Second Amended Petition, Schoolcraft raises three enumerations of error. Schoolcraft contends police unlawfully detained him without probable cause, in violation of his Fourth and Fourteenth Amendments rights. Schoolcraft asserts the time of his arrest is material to his Fourth Amendment claim. Specifically, Schoolcraft notes a police report indicates Schoolcraft was arrested and charged with commission of crimes at 4:21 p.m., but an investigator testified Schoolcraft was not arrested until after police searched his home at 9:00 p.m. and had been given his Miranda warnings at 5:57 p.m., and Schoolcraft contends this testimony "is demonstrably false." Doc. 38 at 16.[4] Schoolcraft asserts the prosecutor knew or should have known the testimony was false and did nothing to correct it, amounting to prosecutorial misconduct. Id. at 17–18 (Ground 1).[5] Schoolcraft also contends his trial counsel

---

[4] Schoolcraft contends his interview with Investigator Roxanne McKeon began at approximately 1:20 p.m. on December 28, 2011, and lasted 40 minutes. Doc. 38 at 5. Investigator Marc Neu then interviewed Schoolcraft for about four hours, which would have been until approximately 6:00 p.m. Id. at 6. Schoolcraft contends Investigator Neu testified he read Schoolcraft his Miranda warnings at 5:57 p.m. because the victim "started making serious allegations" against him. Id. at 7. Investigator McKeon also testified Schoolcraft was not under arrest at that time and was not arrested until around 9:00 p.m. that same day. Id. at 8. Schoolcraft asserts the time he was arrested is material to his Fourth Amendment claims because he believes he was arrested at 4:21 p.m. on December 28, 2011, based on the police report. Id. at 16, 19. In support of this claim, Schoolcraft points to the annotation of "CLARR" in the report, which stands for "cleared by arrest." Id. at 27; Doc. 20-1 at 9; Doc. 8-8 at 42, 43. The state did not stipulate to this being the time of Schoolcraft's arrest, and the state court, during the hearing on Schoolcraft's extraordinary motion for new trial, did not find this to be newly discovered evidence to support such a motion. Doc. 20-1 at 14, 23.

[5] The second two sentences of this opening paragraph are provided to frame the three enumerations of error. Schoolcraft's three enumerations of error begin with "Additionally, Schoolcraft . . . ." The Court has also put the actual grounds of claimed error in parentheses for clarity.

was ineffective for failing to properly investigate the time of Schoolcraft's arrest and successfully have his confession suppressed. Id. at 24, 30 (Ground 2). Further, Schoolcraft asserts the state court's determination regarding his knowing and voluntary waiver of his Miranda rights was contrary to clearly established federal law. Id. at 30 (Ground 3).

Respondent maintains Grounds 1 and 2 of Schoolcraft's Second Amended Petition have been defaulted. Doc. 40-1 at 2–3. Respondent asserts the state court's determination on Schoolcraft's Miranda argument, Ground 3, is entitled to deference. Id. at 4–5.

I.    **Grounds 1 and 2 Are Defaulted**

   A.    **Default on Ground 1**

Respondent contends Schoolcraft's assertion relating to the prosecutor's failure to correct testimony she knew or should have known was false is procedurally defaulted under O.C.G.A. § 9-14-48(d). Doc. 40 at 2. Respondent explains Schoolcraft raised this claim in his first state habeas petition, and the state habeas court found this claim was procedurally defaulted because Schoolcraft did not raise it in his direct appeal. Doc. 7-1 at 16. Additionally, Respondent states the state habeas court determined Schoolcraft did not establish cause and prejudice, which would be required to overcome default. Id. at 17. Respondent asks this Court to defer to this finding of default and conclude this Ground is defaulted. Id. at 16.

Schoolcraft asserts a "liberal reading" of his April 9, 2018 application for certificate of probable cause to appeal reveals he addressed this ground in his first and second petitions for writ of habeas corpus. Doc. 41 at 3. Schoolcraft concedes the state court applied a procedural bar to his claim without reaching the merits. Id. at 4. However, Schoolcraft does not agree with the application of the bar and urges this Court to address the merits of his claim. Id. at 5.

"It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." Cone v. Bell, 556 U.S. 449, 465 (2009) (citation omitted). The United States Supreme Court has "held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." Id. The adequacy of the procedural bar is not a matter of state law but "is itself a federal question." Id. (internal quotation marks omitted). A three-part test is used to determine "whether the state decision rested upon an independent and adequate ground under state law: First, the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim. Secondly, the state court's decision must rest solidly on state law grounds, and may not be intertwined with an interpretation of federal law." Doorbal v. Dep't of Corr., 572 F.3d 1222, 1227 (11th Cir. 2009) (internal punctuation and citations omitted). "Finally, the state procedural rule must be adequate; i.e., it must not be applied in an arbitrary or unprecedented fashion [or be manifestly unfair]." Id. (alterations in original).

O.C.G.A. § 9-14-48(d) provides, in relevant part:

> The court shall review the trial record and transcript of proceedings and consider whether the petitioner made timely motion or objection or otherwise complied with Georgia procedural rules at trial and on appeal and whether, in the event the petitioner had new counsel subsequent to trial, the petitioner raised any claim of ineffective assistance of trial counsel on appeal; and absent a showing of cause for noncompliance with such requirement, and of actual prejudice, habeas corpus relief shall not be granted. In all cases habeas corpus relief shall be granted to avoid a miscarriage of justice.

Schoolcraft's procedural default under O.C.G.A. § 9-14-48(d) is an independent and adequate state law ground upon which the state court based its decision. The state habeas corpus judge

7

clearly and expressly stated she was relying on the Georgia procedural default rule in determining Schoolcraft's false testimony claim was barred on habeas review. Doc. 8-5 at 14–15. In addition, the state habeas corpus judge's decision rests solidly on state law grounds, and the application of § 9-14-48(d) was not done arbitrarily or in an unprecedented fashion, as this statute has been applied on numerous occasions in Georgia. See, e.g., King v. Chatman, No. 212-119, 2014 WL 1365415, at *7 (S.D. Ga. Apr. 7, 2014); Schofield v. Meders, 632 S.E.2d 369 (Ga. 2006); Turpin v. Todd, 493 S.E.2d 900 (Ga. 1997). Schoolcraft did raise this issue in his first state habeas corpus petition, doc. 8-1 at 5; doc. 8-2 at 1; doc. 8-3 at 2–3, but this is not material. What is material is Schoolcraft did not raise this claim on direct appeal, meaning he defaulted on the claim. And Schoolcraft did not show cause and prejudice to overcome his default under Georgia law. Doc. 8-5 at 11–12, 15. Moreover, Schoolcraft has not established cause and prejudice in this Court to overcome his non-compliance with § 9-14-48(d), nor has he shown he will suffer a miscarriage of justice. Thus, Schoolcraft is not entitled to any relief based on Ground 1.

### B.     Double Default on Ground 2

Respondent contends Schoolcraft's ineffective assistance claim relating to trial counsel's failure to investigate is "doubly" defaulted under Pope v. Rich, 358 F.3d 852 (11th Cir. 2004). Doc. 40-1 at 2. Specifically, Respondent states the claim is first defaulted because Schoolcraft raised the ground in his third state habeas petition and it was dismissed as successive, but Schoolcraft did not appeal this ruling, depriving the Georgia Supreme Court of jurisdiction to review the issues in the third petition under O.C.G.A. § 9-14-52(b). Respondent contends the claim is also defaulted because the state habeas corpus court dismissed this ground as defaulted under Georgia's successive petition rule (O.C.G.A. § 9-14-51). Id. at 3.

According to Schoolcraft, the state habeas court did not rule on his third petition until 19 months after the hearing on the petition. Doc. 41 at 3. Schoolcraft argues this "undue delay" "reasonably prejudiced" him from seeking an appeal with the Georgia Supreme Court before he filed his § 2254 Petition. Id. Schoolcraft contends he is "once again" "caught in a procedural quagmire" under Pope. Id.

Before bringing a § 2254 habeas petition in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. §§ 2254(b), (c). When a federal habeas petition raises a claim which has not been exhausted in state proceedings, the district court ordinarily must either dismiss the petition, "leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court[,]" Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1351 (11th Cir. 2004) (internal citation and punctuation omitted), or grant a stay and abeyance to allow the petitioner to exhaust the unexhausted claim. See Rhines v. Weber, 544 U.S. 269, 277–79 (2005). "[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, [the district court] can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." Kelley, 377 F.3d at 1351 (punctuation in original). The unexhausted claims should be treated as if procedurally defaulted. A petition is "due to be denied with prejudice [if] there are no state remedies left to exhaust and all of the claims are either meritless or procedurally defaulted[.]" Chambers v. Thompson, 150 F.3d 1324, 1326 (11th Cir. 1998).

The successive petition rule is found in O.C.G.A. § 9-14-51, which provides:

All grounds for relief claimed by a petitioner for a writ of habeas corpus shall be raised by a petitioner in his original or amended petition. Any grounds not so

> raised are waived unless the Constitution of the United States or of this state otherwise requires or unless any judge to whom the petition is assigned, on considering a subsequent petition, finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition.

This statute "can and should be enforced in federal habeas proceedings against claims never presented in state court, unless there is some indication that a state court judge would find the claims in question could not reasonably have been raised in the original or amended [state] petition." Ogle v. Johnson, 488 F.3d 1364, 1370 (11th Cir. 2007) (alteration in original).

"A federal court may consider the merits of a procedurally defaulted claim only if the petitioner can show both 'cause' for the default and 'prejudice' from a violation of his constitutional right." Hittson v. GDCP Warden, 759 F.3d 1210, 1260 (11th Cir. 2014) (quoting Wainwright v. Sykes, 433 U.S. 72, 84–85 (1977)). To establish cause, a petitioner must ordinarily "demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court." Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).

Schoolcraft admits he did not file an application for certificate of probable cause to appeal the state court's denial of his third state habeas petition until after he filed his Second Amended Petition in this Court.[6] Doc. 38 at 3. The state habeas court determined this claim was barred under the successive petition rule because Schoolcraft could have reasonably raised this claim in earlier proceedings and did not. Doc. 8-14. Thus, Respondent is correct—Schoolcraft's Ground 2 is doubly defaulted. While Schoolcraft contends his default under Georgia law is excused under the cause and prejudice standard, doc. 43 at 2, he presents nothing other than bare

---

[6] Schoolcraft represents he filed his application for a certificate of probable cause on September 29, 2020. Doc. 38 at 3. That is two weeks after Schoolcraft filed his Second Amended Petition and more than a year after he filed his initial Petition in this action.

allegations suggesting he meets this standard.  Schoolcraft is not entitled to federal habeas relief as to Ground 2 of his Second Amended Petition.[7]

## II. The State Court's Determination on Ground 3 Is Entitled to Deference

Respondent asserts the Georgia Court of Appeals considered Schoolcraft's Miranda detention claim and denied this claim and that determination is entitled to deference.  Doc. 7-1 at 12, 13; Doc. 40-1 at 4.

Schoolcraft responds the Georgia appellate court only determined whether his post-Miranda confession was voluntary and admissible, not whether the trial court used the wrong legal standard in determining custody.  Doc. 45 at 4.  Thus, Schoolcraft maintains that court's determination is not entitled to deference.  Id. at 5.  Further, Schoolcraft states the trial court made no factual findings on the objective circumstances surrounding his seven-hour interview to decide whether a reasonable person in his position would have believed he was free to leave.  Id. at 5.  Instead, Schoolcraft claims the Georgia Court of Appeals should have remanded his case to the trial court so he could have raised the time of his arrest to the trial court's attention.  Id. at 6.

Section 2254(d) of Title 28 of the United States Code sets forth the deference to be afforded to a State court's legal determinations:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

---

[7]   Schoolcraft did file an application for certificate of probable cause to appeal with the Georgia Supreme Court after filing his initial Petition, but that court denied his application on May 3, 2021. https://scweb.gasupreme.org:8088/results_one_record.php?caseNumber=S21H0393 (last visited May 20, 2022); Doc. 46.  In Pope, the Eleventh Circuit noted petitioner's failure to apply for a certificate of probable cause to appeal the denial of his state habeas petition meant he failed to exhaust his available state remedies.  358 F.3d at 853.  Pope certainly applied to bar this ground at the time of Schoolcraft's original filing and the filing of his Second Amended Petition on September 15, 2020.

11

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). In reviewing a petitioner's habeas claim under § 2254(d)(1), a court should first determine the law that was "clearly established" by the Supreme Court at the time the State court adjudicated the petitioner's claim. Williams v. Taylor, 529 U.S. 362, 391 (2000). After determining the clearly established law, the reviewing court should next determine whether the State court's adjudication was "contrary to" clearly established Supreme Court case law or involved an unreasonable application of that clearly established Supreme Court law. Id. A state court's adjudication is contrary to clearly established Supreme Court case law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the State court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413 (O'Connor, J., concurring). A State court's decision involves an unreasonable application of clearly established Supreme Court law if the "court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was objectively reasonable. Id. at 409 (O'Connor, J., concurring). To justify issuance of the writ under the "unreasonable application" clause, the state court's application of Supreme Court precedent must be more than just wrong in the eyes of the federal court; it "must be 'objectively unreasonable.'" Knight, 936 F.3d at 1331 (quoting Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017); in turn quoting Woods v. Donald, 575 U.S. 312, 316

(2015)); see also Bell v. Cone, 535 U.S. 685, 694 (2002) (explaining "an unreasonable application is different from an incorrect one").

The clearly established law regarding "custody" issues is Miranda v. Arizona, 384 U.S. 436 (1966). The right to Miranda warnings attaches when custodial interrogation begins. United States v. Acosta, 363 F.3d 1141, 1148 (11th Cir. 2004). The Miranda court held pre-interrogation warnings are required in the context of custodial interrogations given "the compulsion inherent in custodial surroundings." Miranda, 384 U.S. at 458. The Supreme Court explained "custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444. However, as the Court noted in Yarborough v. Alvarado, 541 U.S. 652, 661 (2004), the Miranda decision did not provide the Court with an opportunity to apply that test to a set of facts. As those opportunities arose, the Supreme Court defined custody for the purposes of Miranda as a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (internal citation and punctuation omitted).

"[W]hether a suspect is 'in custody' is an objective inquiry." J.D.B. v. North Carolina, 564 U.S. 261, 270 (2011); see also Yarborough, 541 U.S. at 662–63 (2004) (same). Thus, the actual, subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant, and the reasonable person from whose perspective "custody" is defined is a reasonable, innocent person. United States v. Brown, 441 F.3d 1330, 1347 (11th Cir. 2006) (quotations, citations, alteration, and emphasis omitted). "[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442 (1984).

The Georgia Court of Appeals noted the evidence presented during a pre-trial hearing revealed investigators went to Schoolcraft's job and asked him if he would come to the station to speak with him. Doc. 36-1 at 6. Schoolcraft agreed to do so and drove to the police station in his own car with his wife. Investigators began the interview, but no allegation had been made concerning Schoolcraft having a sexual relationship with the minor victim at that time. Id. The Georgia appellate court specifically noted Schoolcraft's testimony at the hearing he felt "free to leave." Id. During the course of this interview, one investigator called the minor victim to come back to the station for a re-interview and, when the investigator was re-interviewing the victim, the second investigator read the Miranda warnings to Schoolcraft. Id. at 6–7. The Georgia Court of Appeals observed Schoolcraft did not sign the Miranda waiver but acknowledged he understood his rights and agreed to continue speaking with investigators. Id. at 7. After being read the Miranda warnings, Schoolcraft confessed to attempting to have sex with the minor victim and to touching her inappropriately. The Georgia Court of Appeals also observed Schoolcraft was allowed to use the restroom and to smoke outside and in the interview room, was given water, soda, and cigarettes, and did not seem to be apprehensive or ask the investigators to stop asking questions. Id. at 7. The appellate court found no error in the trial court's determination Schoolcraft's confession was knowing and voluntary. Id. at 8–9.

Schoolcraft has not shown the state appellate court unreasonably applied controlling, clearly established federal law in denying his Miranda-based claim. The Georgia appeals court applied Miranda to the facts before it and determined Schoolcraft's Miranda-based claims were without merit. Based on the appellate court's examination of these facts, it is apparent that court

applied the relevant standards to Schoolcraft's Miranda-based claim.[8] Schoolcraft is not entitled to his requested relief, and the Court should **DENY** his § 2254 Petition.

### III.     Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Schoolcraft leave to appeal *in forma pauperis* and deny him a Certificate of Appealability. Though Schoolcraft has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Pursuant to Rule 11 of the Rules Governing § 2254 Cases, "the district court must issue or deny a certificate of appealability when it issues a final order adverse to the applicant." (emphasis supplied); see also Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding in forma pauperis is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v.

---

[8] Schoolcraft attempts to distinguish whether the appellate court applied controlling law in an unreasonable manner from whether the appellate court addressed the trial court's use of the wrong legal standard for custody, and he argues this purported distinction means this Court need not defer to the appellate court on the issue. Doc. 45 at 4. Schoolcraft's argument fails. Even if the Court agreed such a distinction exists, it is a distinction without a difference. The determination of "custody" is important for purposes of Miranda and its progeny and is, as discussed above, an objective inquiry. Schoolcraft points to nothing which indicates this Court cannot and should not defer to the Georgia appellate court on this issue, even if the trial court based its decision on how Schoolcraft "felt." Id. at 1. As recounted, a reasonable person in Schoolcraft's position would have felt free to leave, regardless of whatever Schoolcraft's feelings may have been. See p. 14. What is more, even if this Court could not defer to the Georgia Court of Appeals' determination on Schoolcraft's Miranda-based argument (in whole or part), he has not shown any Miranda violation.

Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact."  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a Certificate of Appealability is issued.  A Certificate of Appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right.  The decision to issue a Certificate of Appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  In order to obtain a Certificate of Appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Id.  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000).  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims."  Miller-El, 537 U.S. at 336.

Based on the above analysis of Schoolcraft's Second Amended Petition and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appeal; therefore, the Court should **DENY** the issuance of a Certificate of Appealability.  Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal

would not be taken in good faith. Thus, the Court should likewise **DENY** Schoolcraft *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **DENY** Schoolcraft's 28 U.S.C. § 2254 Second Amended Petition for Writ of Habeas Corpus, doc. 38, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Schoolcraft leave to proceed *in forma pauperis* and a Certificate of Appealability.

**SO REPORTED and RECOMMENDED**, this 20th day of May, 2022.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA